## LIABILITY OF OWNER OF TEAM CAUSING DEATH OF CHILD.

Circuit Court of Cuyahoga County.

WILLIAM BECKER v. JENNIE HOWANYECZ, ADMINISTRATRIX OF
THE ESTATE OF BERNARD HOWANYECZ, DECEASED.

Decided, June 28, 1910.

*Wrongful Death—Driver of Team Agent of Owner—Infant—Excessive
Verdict.*

1. In an action against the owner of a wagon for death from wrongful
act occurring through the negligence of a driver of the wagon in
running over an infant playing in the street, the fact that the
driver was in charge of and driving the team attached to the
wagon sufficiently established his agency so as to charge the owner
thereof with liability.

2. A verdict of $800 for the death of an infant two years old will not
be set aside as excessive, even though there was no evidence intro-
duced as to the probable length of life of the infant or as to what
it would probably have contributed to the support of the bene-
ficiaries of the judgment, if it had lived.

*Higley, Maurer & Dautel* and *P. L. A. Lieghley,* for plaintiff
in error.

*Joseph L. Stern,* contra.

MARVIN, J.; WINCH, J., and HENRY, J., concur.

The parties here stand in the reverse order to that in which
they stood in the action in the court of common pleas. The
terms plaintiff and defendant as used in this opinion will refer
to the parties as they stood in the original action.

The plaintiff is the administrator of the estate of a deceased
infant of about two years of age. The defendant is the owner
of several large wagons, with teams, used for moving furniture
and the like.

On the 17th day of October, 1907, the child whose estate is
being administered upon by the plaintiff, was killed on West
19th street in the city of Cleveland. The claim on the part of
the plaintiff is that the child ran out into the street, got in front
of a team of the defendant, driven along said street in connec-

tion with one of the large moving wagons, and was knocked
down by one of the defendant's horses in said team, and stepped
upon by one of the defendant's horses and killed; that the
driver of the team was the agent of the defendant, and that
he was negligent in that he did not keep a lookout in front of
his team to see what might get in front of it, and this on
a street where a good many children were accustomed to play.
That the child was killed either by one of the horses in the
team or by the wagon running over it, is not denied.

The evidence discloses that the team was being driven at a
slow trot or jog. The driver himself testifies that some dogs
on the ground were barking at a dog in the wagon of the de-
fendant. The testimony of Mary Moran is that she being at
a house adjoining the one in which the child lived, saw the child
go out into the street; saw the feet of one of the horses strike
the child; and saw the child fall and the horse step upon the
child's head. The driver of the team did not notice the child
and drove on, but immediately following him was another team
belonging to the defendant, the driver of which saw this acci-
dent. He stopped his team, picked up the dead child and de-
livered it to its mother, who had rushed out hearing the screams
of Miss Moran, who testifies to having seen the accident. This
driver of the second team says that the child ran under the
wagon of the first team and not in front of the horses. Miss
Moran testifies that the driver of the first team was striking his
whip at the dogs which were barking on the ground, and also
was not looking in such wise as to see what was in front of his
team. This the driver of the first team denies. The driver of
the second team does not know whether the driver of the first
team was looking in such wise as to see what was in front of
his horses or not, but does know he was giving some attention at
least to the dog in the wagon. The testimony of Miss Moran
directly conflicts with the testimony of the driver of the front
or first team, but we find nothing improbable in her testimony,
and are not surprised that the jury should have believed her
testimony to be true. The jury was properly instructed as to
what would constitute actionable negligence, and if they be-
lieved Miss Moran, as they might well do, they properly found

that there was negligence on the part of this driver, who should have been looking out when his team was being driven along a street in a populous city, where children play in the street, to see what was in front of his team. He says he was. She says he was not. The jury believed her.

The brief of the defendant urges that the driver of the team which killed the child, either by being trodden upon by one of the horses, or by being crushed by the wagon, is not shown to be the agent of the defendant. It is shown by his testimony and by that of the other driver, that he was in charge of and driving the team of the defendant and this sufficiently establishes his agency, and so far for his negligence in the performance of his duty as driver of that team is concerned, the defendant would be liable. The result in the court below was a verdict for $800 in favor of the plaintiff. No evidence was introduced as to the health of this child, or circumstances of the family of the child, except that the child had a mother and a young brother and sister. It is said on the part of the defendant that the damages, if any were to be recovered, were excessive, and that, indeed, without evidence as to the probable length of life of the child, and the probable aid that it would be to the family, nothing more than nominal damages should have been recovered in any event, and that surely the verdict for $800 is excessive.

In the case of *Russel* v. *Sunbury*, 37 Ohio St., 372, the court on page 376 in the opinion uses this language:

"The law assumes that there is such a pecuniary loss to the widow and next of kin, and awards to them damages therefor."

In the case of *Transit Company* v. *Dagenbach*, 11 Ohio Circuit Decisions, 308, a recovery for $1,000 was sustained for the death of a boy five years of age, although no evidence was permitted to go to the jury as to what the boy might probably have been able to earn in aiding his father in his cigar factory. At page 310 of the opinion, Judge Laubie, speaking for the court, says that the father was a cigar maker and offered to show that he expected to use the boy to aid him in his work as such. This evidence was excluded, and though it might properly have been admitted, still in the absence of any evidence, as already stated,

the court permitted the judgment to stand. The concluding paragraph of the opinion reads:

"While we might have been better satisfied with a less verdict, we are not prepared to say that it was a verdict that was rendered under prejudice or passion, or that it was clearly excessive within the meaning of the law, which allows the party to take advantage of such a question. We can not say that this verdict was manifestly wrong, and on the whole the case will have to be affirmed."

This judgment was affirmed, without report, by the Supreme Court. See 67 Ohio St., 612.

In the case of *Ellis* v. *Twiggs,* decided by this court on the 13th of January, 1910, which was a suit for the wrongful death of a wife, Judge Henry said, speaking for the court:

"As to the measure of damages it is claimed that nothing is shown in the evidence regarding any actual pecuniary damages sustained by any of the next of kin, the husband and children of the deceased. We think it is unnecessary to show anything more than the fact of wifehood and motherhood to authorize substantial as distinguished from nominal damages."

See, also, *Railway Co.* v. *Murphy,* 50 Ohio St., 135.

This was an action for wrongful death and in that case it was urged that nothing was shown affirmatively as to the pecuniary loss to the beneficiaries. The court, however, sustained a verdict for the plaintiff.

We reach the conclusion that the court did not err in overruling the motion for a new trial on the ground that the verdict was not sustained by sufficient evidence, nor on the ground that the verdict was excessive. It is said, and properly too, that juries are not permitted to *"guess"* what the damages in this or in any other case will be, and this is correct, if the word "guess" is construed to mean "to reach a conclusion without any basis for it." But the word may be used in such sense as to be misleading, because in all cases where a recovery is had for wrongful death, the damages are altogether uncertain. It can never be known how long the deceased would have lived but for the accident, nor what he or she would have contributed

to the support of his or her family or next of kin. It can only be determined on probabilities.

The language quoted from the opinion of Judge Laubie in *Transit Co.* v. *Dagenbach, supra,* expresses our views in reference to this case, and the judgment is affirmed.